## DIAMOND ALKALI CO. v. DRISCOLL, Collector of Internal Revenue.

### No. 691 Civ. A.

District Court, W. D. Pennsylvania.

Feb. 25, 1941.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

George Mashank, Acting U. S. Atty. for Western District of Pennsylvania, and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to Atty. Gen., for defendant.

GIBSON, District Judge.

By the present action the plaintiff seeks to recover a portion of the capital stock tax paid by it for the taxable year ending June 30, 1935.

In 1934 the plaintiff had in its possession 100,426 shares of Treasury stock, of which 79,000 shares were of Preferred "A" and 21,426 shares were of Preferred "B" stock. By certificate filed with the Secretary of State of Delaware, on February 13, 1934, the plaintiff retired and cancelled 45,713 shares of Preferred "A" and 21,426 shares of Preferred "B" stock, and reduced its capital by $6,713,900. On December 11, 1934, it amended its certificate of incorporation and changed its capital structure, the effect of which was to retire 16,674 shares of Preferred "A" stock in addition to those previously retired.

Plaintiff's declared value of its capital stock for tax purposes on June 30, 1934, was $36,000,000. From this sum it deducted the amount of the cost to it of the stocks retired in 1934. With the amount of this deduction, and other adjustments, the value of its capital stock appeared as $30,235,161.09, and upon this amount it paid a capital tax of $30,235. The Commissioner of Internal Revenue disallowed the deduction to the extent of $6,228,660.59, allowing $1,665,318.71 of it. The amount of the disallowance was based upon the cost of the stock acquired before January 1, 1934, and the allowance was the cost of the stock acquired after that date. After the disallowance the plaintiff, on June 17, 1937, paid $6,228 as an addition to its capital stock tax, with interest thereon of $721.35. A timely claim for refund was made.

The basis of the Commissioner's disallowance of a portion of plaintiff's reduction claim is found in an opinion by the Assistant General Counsel for the Bureau of Internal Revenue. As stated by the Assistant General Counsel, the reason for the opinion is as follows: "An opinion is requested concerning the proper application of the provisions of section 701(f) of the Revenue Act of 1934, where a corporation acquires its own capital stock and holds,

retires, resells, or otherwise disposes of it." G.C.M. 15055.

After reviewing section 701(f) of the Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 788, and discussing the character of Treasury stock, the Assistant General Counsel stated: "The complete retirement of any part of the stock of a corporation is a distribution in liquidation. (Article 115-5, Regulations 86.) The purchase of stock for retirement marks the commencement of the distribution for liquidation but the transaction is not complete unless and until the stock is actually retired. The foregoing views are in harmony with conclusions reached in S.T. 728 (C.B. XIII-1, 447) in respect of a similar question under a previous law. In order to satisfy the terms of subdivision (A) of section 701(f), there must be a retirement of the stock as well as a distribution of property in exchange for the stock. Both conditions must be satisfied. If there is a purchase of stock for the express purpose of retirement and it is actually retired, there is clearly a distribution in liquidation within the meaning of the law. The retirement completes the liquidation, but if it was an afterthought it can not be related back to the purchase so as to warrant the conclusion that there was any distribution in liquidation within the meaning of subdivision (A)."

In the foregoing the learned General Counsel seems not to have confined himself to his function of interpretation of the statute, but to have encroached upon the function of the Congress. Search has been made in vain for the purpose of finding support in statute or Regulation for the General Counsel's assertion that a taxpayer may not claim a reduction in its capital stock tax by reason of the cancellation of part of its stock unless those shares were acquired within the taxable year for which return is made, and acquired for the purpose of retiring them. Not only is such support lacking, but the reverse seems to be true. The statute, Section 701(f) of the Revenue Act of 1934, declares that the taxpayer, in adjusting the declared value for each year, is entitled to deduct "the value of property distributed in liquidation to shareholders", and that "the amount of such adjustment for each such year shall be computed * * * according to the income tax law applicable to such year."

Section 115(i) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 115(i) follows: "(i) *Definition of partial liqui-* *dation.* As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

It will be noted that nothing is said in respect to the intention of the taxpayer in the acquisition of the shares retired.

Article 115-5 of Regulations 86 (in force at the time) was cited by the Assistant General Counsel in his opinion. It reads:

"Art. 115-5. *Distributions in liquidation.* —Amounts distributed in complete liquidation of a corporation are to be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation are to be treated as in part or full payment in exchange for the stock so cancelled or redeemed. The phrase 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all the shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any part of the stock, whether or not pro rata among the shareholders.

\* \* \* \* \* ".

Nothing is in it as to intention of the taxpayer at the time of acquisition.

In his opinion the Assistant General Counsel for the Bureau of Internal Revenue cited S.T. 728 (C.B. XIII-1, 447). It reads as follows: "Section 115(c) of the Revenue Act of 1932 [26 U.S.C.A. Int.Rev.Acts, page 520] provides that 'amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock.' Subdivision (h) of that section prescribes that 'as used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock'. Article 625 of Regulations 77 provides that 'A complete cancellation of redemption of a part of the corporate stock may be accomplished, for example, * * *

by the complete retirement of any part of the stock whether or not pro rata among the shareholders."

This ruling contains no mention of purpose in the acquisition of the stock cancelled. The same ruling in identical words is in force in the present Regulations. See Article 115-5 of Regulations 103. And, from a practical standpoint, why should it contain any such limitation as prescribed by the Assistant General Counsel's opinion and the interpretation thereof by the Commissioner of Internal Revenue. What is the difference in situation of the taxpayer, which has acquired its stock with intention to cancel and withdraw it, after cancellation, and the situation of the taxpayer which has cancelled its stock, but without intention to do so at the time it was acquired? The answer is: None. Each taxpayer has divested itself of stock which it might have sold and used for its corporate purposes. And having attained the same result, with the same effect, why should one taxpayer, for want of a presumed lack of intention— a rather intangible matter—be penalized, particularly in the absence of statutory enactment upon the matter, by denial of the right to avail itself of the general privilege extended by statute to corporations which have changed their financial structures by withdrawing a part of their stock? The court perceives no logical reason.

It will be noted that the ruling of the Commissioner in the present matter is based, not upon evidence of the intention of the taxpayer at the time of the acquisition of the stock ultimately retired, but upon a presumption of such intention arising by the passage of time. Cancelled within the same tax year it was acquired, the stock was presumed by him to have been bought with the intention of retiring it; and acquired in another year, the presumption was otherwise, although the net result was the same. The adoption of such a presumption without prior notice, and without any statutory authority, at least verges upon the capricious.

The attention of the court has been called to several decisions which assert that the rulings of the Internal Revenue officials are entitled to great consideration and should not be lightly overturned. Those decisions are not to be questioned. In any consideration of language of doubtful meaning in a statute the interpretation of officials charged with the duty of executing the law is to be given great respect; but that re-

spect is not required to rise to the degree of acceptance of their rulings which plainly are not interpretations of statutes, but are additions to or limitations of statutes not in the contemplation of the Congress which enacted them. The ruling of the Commissioner in the present case is one which materially changes and adds to the definition of partial liquidation as set forth in section 115(i) of the Revenue Act of 1934, supra, and is an encroachment upon the power of the Congress.

Judgment will be entered for plaintiff, and a certificate of probable cause signed when presented.